IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| HOLLY NEWMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: SAG-21-02446 |
| DIRECT ENERGY, L.P., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Holly Newman ("Plaintiff") filed this putative class action against Direct Energy, L.P. ("Direct Energy"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. ECF 1. Presently pending is Direct Energy's Motion to Transfer Venue, ECF 42. Plaintiff filed an Opposition, ECF 45, and Direct Energy filed a Reply, ECF 47. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, Direct Energy's Motion to Transfer will be GRANTED and this case will be transferred to the Southern District of Texas.

I. **Factual Background**

Direct Energy is an energy company headquartered in Houston, Texas, providing services to customers nationwide. ECF 1 ¶ 9. Plaintiff alleges that Direct Energy routinely makes unsolicited and prerecorded telemarketing calls to the cellular telephones of prospective customers, even when those customers have not given their prior express consent to receive such calls. *Id.* ¶ 13. Specifically, Plaintiff alleges that she received at least one, and possibly more than one, autodialed call from Direct Energy in or around January, 2019. *Id.* ¶ 15. She further alleges that she has not ever been a Direct Energy customer and did not provide express consent to allow Direct Energy to call her cellular telephone with a prerecorded message. *Id.* ¶ 21. She sues on

behalf of herself and as the representative of a putative class pursuant to Federal Rule of Civil Procedure 23, which she defines as:

> All persons in [] Direct Energy's Northeast region to whom Defendant placed an artificial or prerecorded voice call, and who did not provide to Defendant the cellular phone number called, from four years prior to the date of this complaint through the date of class certification.

*Id.* ¶ 26.

The relevant procedural history is as follows: In 2019, Plaintiff's attorneys filed a putative class action against Direct Energy in the Southern District of Texas on behalf of another plaintiff, Brittany Burk. *Burk v. Direct Energy, LP*, Civ. No. 4:19-CV-663 (S.D. Tx). The proposed putative class in that case was defined as:

> All persons in the United States who, between December 1, 2018 and April 30, 2019 (1) received a non-emergency Direct Energy call; (2) to their cellular telephone numbers; (3) through the Teledrip dialing platform and/or a prerecorded voice.

*Burk v. Direct Energy, LP*, No. 4:19-CV-663, 2021 WL 4267146, at *1 (S.D. Tex. Sept. 20, 2021). Following months of contested discovery and motions practice, the judge in that case denied Burk's motion to certify a nationwide class but allowed her individual claim to proceed. *See id.* at *1. United States District Judge George C. Hanks, Jr. determined that Burk had failed to show that questions common to the class members predominated over individualized inquiries as a result of the "individualized, fact-intensive disputes about consent that already permeate the record." *Id.* at *5.

Just four days after Judge Hanks's decision denying class certification, the same plaintiffs' counsel filed the instant action on behalf of Plaintiff as representative of the more geographically

limited but temporally expanded class described above.[1] ECF 1. United States District Judge George J. Hazel denied Direct Energy's Motion to Dismiss or Strike Class Allegations, ruling that Plaintiff should be entitled to discovery before this Court can properly consider whether class certification is appropriate and concluding the motion to dismiss unnamed putative class members based on personal jurisdiction was premature and should be filed after the class is certified. ECF 36 at 9, 12. A few weeks later, Direct Energy filed the instant motion, seeking to transfer the case to the same federal court in Texas where the *Burk* case was litigated.

**II.     Legal Standard for a Motion to Transfer**

Direct Energy moves for transfer to the United States District Court for the Southern District of Texas. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404(a) is to "prevent the waste 'of time, energy, and money'" and to "'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). District courts within this circuit consider "four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2)

---

[1] By definition, it would appear that all members of the putative class in this case would also have been members of the putative *Burk* class that was never certified. Because of the expanded time frame in this proposed class, however, it would presumably encompass additional members despite its geographic limitation to the "Northeast region."

witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servcs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). The burden lies with the party seeking transfer to "'show by a preponderance of the evidence' that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Const. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002) (quoting *Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 925 F. Supp. 411 (D.S.C. 1996)).

**III. Analysis**

   **A. Timing of Motion to Transfer**

Plaintiff contends that Direct Energy forfeited its right to seek a change of venue by failing to raise the issue until after Judge Hazel decided its motion to dismiss. ECF 45 at 27–28. That argument lacks merit. While a party may waive a defense of improper venue by failing to raise it in a Rule 12(b) motion, Direct Energy makes no such argument and does not seek dismissal of this case on venue grounds. It simply seeks a transfer of venue pursuant to 28 U.S.C. § 1404, which is a motion that "may be made at any time." *See Lencco Racing Co., Inc. v. Arctco, Inc.*, 953 F. Supp. 69, 70 n.1 (W.D.N.Y. 1997); *see also Ademiluyi v. Nat'l Bar Ass'n*, Civ. No. GJH-15-02947, 2016 WL 4705536, at *4 (D. Md. Sept. 8, 2016) ("Indeed, 'nothing bars a court from granting a motion to transfer venue at a later stage in the case.'") (quoting *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006)). Thus, this Court proceeds to analyze the applicable factors governing transfer of venue below.

   **B. Factors**

The parties appear to concede that venue lies both in this Court (because Plaintiff allegedly received her call from Direct Energy in Maryland) and in the Southern District of Texas, the

Defendant's primary place of business. The question, however, is whether a transfer of venue remains appropriate for the reasons set forth in 28 U.S.C. § 1404. This Court therefore turns to the relevant considerations.

**1. Weight Accorded to Plaintiff's Choice of Venue**

In ordinary circumstances, a "plaintiff's 'choice of venue is entitled to substantial weight.'" *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). That general principle, however, is undermined by two facts in this case: the evident forum shopping on the part of Plaintiff and the geographic breadth of the proposed class.[2]

The facts of this case suggest Plaintiff engaged in forum shopping in an effort to evade Judge Hanks's unfavorable ruling. Counsel initially filed their *Burk* class action suit in the district where Direct Energy is headquartered, not in the jurisdiction where their named plaintiff, Burk, resides. When the certification ruling proved unfavorable, counsel filed this new class action case in another jurisdiction just days later, this time claiming that the case is properly filed where the named plaintiff resides. "Where, as here, '[t]he same counsel, seeking to represent a nearly identical class, filed an earlier lawsuit premised on the same allegedly unlawful activity in [another district] . . . and receiv[ed] unfavorable rulings from that Court,' and then filed suit in [another district, a court 'can reasonably draw an inference from such conduct that Plaintiff['s] counsel are

---

[2] Plaintiff alleges the existence of "a special venue statute that liberalizes venue requirements for plaintiffs' benefit," but offers no citation to support that assertion. And her citation to *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) entirely misapprehends the ruling in that case, which dealt with subject matter jurisdiction, not venue. *See also id.* at 381 n.11 (explaining that Congress kept venue rules the same for private actions under the TCPA statute but adjusted venue rules for TCPA actions brought by State Attorneys General). The TCPA offers no special venue provision for private actions of which this Court is aware.

engaged in forum shopping.'" *Evans v. Arizona Cardinals Football Club, LLC*, Civ. No. WMN-15-1457, 2016 WL 759208, at *4 (D. Md. Feb. 25, 2016) (internal citation omitted).[3]

In addition to the well-founded concerns about forum shopping, because this is a class action case, Plaintiff's choice of forum is afforded little weight. *See Oeste v. Zynga, Inc.*, GLR-20-1566, 2021 WL 1785139 (D. Md. May 5, 2021); *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) ("[B]ecause this is a class action case, Plaintiffs' choice of forum is afforded little weight"); *Evans*, 2016 WL 759208, at *3 ("[T]he named plaintiff's choice of forum is afforded little weight because in [a class action] case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." (internal citation omitted)). TCPA class actions present even less reason to credit a plaintiff's choice of forum, as they "are normally attorney driven and require limited participation from the named plaintiff for their individual claims or as class representatives." *Pierucci v. Homes.com, Inc.*, Civ. No. CV-20-08048-PCT-DWL, 2020 WL 5439534, at *5 (D. Ariz. Sept. 10, 2020) (citation and internal quotation marks omitted).

For those reasons, this Court concludes that the weight to be accorded Plaintiff's preferred venue is minimal.

**2. Convenience for Witnesses and Parties**

The two "convenience" factors assess the convenience of each venue for the witnesses and for the parties. Beginning with the obvious, litigating the case in Texas would be more convenient

---

[3] This Court does not doubt that the favorable ruling from Judge Hanks is also one motivating factor in Direct Energy's motion to transfer this case to Texas. This Court makes its ruling herein based on the four factors it has weighed and not as any type of reward for forum shopping by the Defendant. It has assigned no weight to Defendant's choice of venue, which is not an appropriate factor. Finally, as elsewhere noted, there is no guarantee that this case will be assigned to Judge Hanks upon its transfer.

for Direct Energy, as it is headquartered in Houston. It would also likely be more convenient for the Direct Energy employees who can reasonably be anticipated to be witnesses in the ligation. Likewise, litigating the case in Maryland will be more convenient for Plaintiff and for other yet-unidentified Maryland-based class members. The relative convenience for class members outside of Maryland remains to be seen. While the exact boundaries of the "Northeast region" are not specified, Maryland is customarily deemed to be in the "Mid-Atlantic" and is not particularly convenient to a resident of Maine, New Hampshire, or Vermont. Such persons would have to travel a significant distance, likely by airplane, to either Maryland or Texas. Once domestic air travel is involved, variations in distance are relatively immaterial.

Others of Plaintiff's assertions of "convenience" are unpersuasive, like suggesting that Maryland is more convenient for her Illinois- or California-based counsel because they previously "have lived in the Maryland area." ECF 45 at 17. Finally, in the era of Zoom depositions, the likelihood of extensive travel for any witness or party is greatly minimized. Ultimately, this Court deems the "convenience" factors to be largely neutral, in that neither party presents an overwhelmingly persuasive case that there are meaningful differences in convenience between the two prospective venues.

### 3. Interest of Justice

The interest of justice, in this case, is the controlling factor. This factor "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 783 (D. Md. 2009). In this case, there is a significant one: this Court's ability to exercise personal jurisdiction over claims against Direct Energy by unnamed, non-Maryland-based class members is uncertain. As Judge Hazel explained, the Fourth Circuit has not yet opined on whether a court may exercise personal jurisdiction over

non-resident class action members without an adequate link to the court's home jurisdiction in light of the U.S. Supreme Court's decision in *Bristol-Myers Squibb Company v. Superior Court of California*, 137 S. Ct. 1773 (2017). *See* ECF 36 at 9. Although that question did not warrant dismissal of this case for lack of personal jurisdiction prior to class certification, there is a separate question about whether it is in the interest of justice to transfer this case to a court that can properly exercise general jurisdiction over Direct Energy. Other courts have transferred venue to achieve certainty in circumstances where jurisdiction is questionable. *See Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp. 2d 730, 734 (D. Md. 2003) ("Because the question is a close one, I will exercise my discretion to transfer this case in the interests of justice. *See* 28 U.S.C. § 1404. For me to hold that Gaines is subject to personal jurisdiction would inject into the case an unnecessary legal issue that would render the entire litigation null and void if, on appeal, jurisdiction were found to be lacking."); *Workman v. Figueroa*, Civ. No. 3:06-0648, 2007 WL 951843, at *3 (S.D. W. Va. Mar. 29, 2007) (transferring pursuant to § 1404 where "the Court recognizes that a finding of jurisdiction based upon these facts risks reversal on appeal which will make the entire litigation null and void."); *BSN Med. Inc. v. Am. Med. Prods., LLC*, Civ. No. 3:11-CV-92-GCM-DSC, 2012 WL 171269, at *4 (W.D.N.C. Jan. 20, 2012) ("The interests of justice strongly favor transfer so that any award BSN might ultimately win here will not be subject to a successful appeal challenging this Court's personal jurisdiction over Defendants."); *First Advisory, LLC v. Am. Water Star, Inc.*, Civ. No. CCB-04-1690, 2004 WL 2538388, at *4 (D. Md. Nov. 9, 2004) (transferring case to the venue including defendants' principal place of business because "a victory subject to being set aside for lack of jurisdiction would be of little value"). Additionally, at least one other court has transferred a case to the defendant's home district to address the same problem presented here – the potential for a lack of personal jurisdiction over the claims of putative class members with no

connection to the named plaintiff's chosen forum. *See Wenokur v. AXA Equitable Life Ins. Co.*, Civ. No. 17-00165-PHX-DLR, 2017 WL 4357916, at *4 & n.4 (D. Ariz. Oct. 2, 2017) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017)).

Plaintiff contends that Judge Hazel's finding that there is personal jurisdiction over her individual claims would be "true for each and every one of the thousands of absent class members in this District." While that may be accurate, Plaintiff's proposed class is not limited to Maryland. It extends to "Direct Energy's Northeast region." There may be an enormous number of class members, then, whose claims have no tie to Maryland at all, calling this Court's personal jurisdiction over those claims into question. The one venue to ensure personal jurisdiction over Direct Energy as to all of the prospective class members is Direct Energy's home district – the Southern District of Texas. Transfer to that district therefore furthers the goals of judicial economy and eliminates the risk of unnecessary expenditure of resources on a protracted jurisdictional dispute or, worst case scenario, an eventual disposition that could be overturned on appeal.

While this Court agrees that Judge Hanks has extensive familiarity with the issues in this case, having presided over months of discovery disputes and having retained jurisdiction to enforce his Protective Order over certain discovery material, this Court does not rely on his familiarity in making its ruling here. Of course, it is not in this Court's purview to determine which judge in the Southern District of Texas will be assigned to this matter upon transfer. If the case is assigned to another judge, there may not be a meaningful benefit to judicial economy. Transfer to that district remains warranted due to the jurisdictional concern, although the parties may potentially accrue some additional benefit as a result of Judge Hanks's familiarity.

In sum, after weighing all of the factors that govern a transfer of venue, this Court finds that the interest of justice factor is the most compelling. The court in the Southern District of Texas

court can exercise general personal jurisdiction over Direct Energy as to the claims of all of the potential class members. Litigating this case in that district, then, would further judicial efficiency and serve the public interest in a manner that considerably outweighs the right of a plaintiff to choose the forum of a class action, particularly in a case presenting indicia of forum shopping. This Court will accordingly grant Direct Energy's motion to transfer this case to the Southern District of Texas.

IV. Conclusion

For the reasons set forth above, Direct Energy's Motion to Transfer to the United States District Court for the Southern District of Texas, ECF 42, is GRANTED. A separate Order effecting the transfer follows.


Dated: April 12, 2023                                    /s/
                                           Stephanie A. Gallagher
                                           United States District Judge